

**NUMBER 13-09-00276-CV**

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI ‑ EDINBURG

---

## IN THE INTEREST OF A.M., A MINOR CHILD

---

**On appeal from the County Court at Law No. 5
of Nueces County, Texas.**

---

# MEMORANDUM OPINION

**Before Chief Justice Valdez and Justices Rodriguez and Garza
Memorandum Opinion by Justice Rodriguez**

Appellant A.T. challenges the trial court's termination of her parental rights to A.M., a minor child.  By two issues, A.T. complains that:  (1) the evidence was legally and factually insufficient to support the trial court's findings justifying termination, *see* TEX. FAM. CODE ANN. § 161.001 (Vernon Supp. 2009); and (2) the trial court erred in admitting a doctor's report, over appellant's hearsay objection, which was used to support the court's finding that A.T. caused A.M. to be born addicted to drugs.  We affirm.

# I.  BACKGROUND

Appellee Texas Department of Family and Protective Services (TDFPS) first became involved with A.M. in January 2007, when A.M. tested positive for cocaine at birth. After further investigation, TDFPS removed A.M. from A.T.'s custody in March 2007, and placed the child in foster care.  Although A.M. was temporarily returned to A.T. in June 2008, custody remained with TDFPS.  In September 2008, A.T. was arrested for driving while intoxicated and child endangerment.  As a result, A.M. was again removed by TDFPS.  A.M. was placed with the same foster family who cared for her following her birth, after a TDFPS investigator determined that it would be unsafe to place A.M. with any member of A.T.'s family.  The foster family intervened in the termination action and expressed a desire to adopt A.M.  In February 2009, following a bench trial, the trial court signed an order terminating A.T.'s parental rights with respect to A.M.

# II.  DISCUSSION

## A.  Legal and Factual Sufficiency

By her first issue, A.T. challenges the legal and factual sufficiency of the evidence supporting the trial court's findings that were used to justify parental termination.[1] Specifically, A.T. alleges that the evidence was insufficient to prove that A.M. was born

---

[1] The following are the findings on which the trial court based termination of A.T.'s parental rights: (1) termination of the parent-child relationship is in the best interest of the child; (2) the mother knowingly placed or allowed the child to remain in conditions or surroundings that endangered the physical or emotional well-being of the child; (3) the mother has been convicted or placed on community supervision for being criminally responsible for the death or serious bodily injury of a child; (4) the mother constructively abandoned the child; (5) the mother failed to comply with a court order establishing actions necessary for the parent to obtain return of the child; (6) the mother used a controlled substance in a manner that endangered the health or safety of the child and failed to complete a court ordered treatment program or, after completion of a program, continued to abuse a controlled substance; and (7) the mother has been the cause of a child being born addicted to a controlled substance. *See* TEX. FAM. CODE ANN. § 161.001(1)(D), (1)(L), (1)(N)-(P), (1)(R), (2) (Vernon Supp. 2009).

addicted to cocaine and that termination of her parental rights was in A.M.'s best interest. *See id.* § 161.001(1)(R), (2).

### 1. Standard of Review

Before terminating parental rights, the trial court must make a finding that the parent committed an act prohibited by section 161.001(1) of the family code and that termination is in the best interest of the child. *Id.* § 161.001; *In re J.L.*, 163 S.W.3d 79, 84 (Tex. 2005); *see also In re C.W.*, No. 13-08-00112-CV, 2009 WL 140524, at *2 (Tex. App.–Corpus Christi Jan. 22, 2009, no pet.) (mem. op.). Involuntary termination of parental rights involves fundamental constitutional rights and divests the parent and child of all legal rights, privileges, duties, and powers normally existing between them, except for the child's right to inherit from the parent. *Holick v. Smith*, 685 S.W.2d 18, 20 (Tex. 1985); *see In re D.S.P.*, 210 S.W.3d 776, 778 (Tex. App.–Corpus Christi 2006, no pet.). For this reason, termination must be supported by clear and convincing evidence. TEX. FAM. CODE ANN. § 161.001; *In re J.L.*, 163 S.W.3d at 84; *In re D.S.P.*, 210 S.W.3d at 778. This intermediate standard falls between the preponderance of the evidence standard of civil proceedings and the reasonable doubt standard of criminal proceedings. *In re G.M.*, 596 S.W.2d 846, 847 (Tex. 1980); *In re C.S.*, 208 S.W.3d 77, 83 (Tex. App.–Fort Worth 2006, pet. denied). It is defined as the "measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." TEX. FAM. CODE ANN. § 101.007 (Vernon 2008).

In reviewing the legal sufficiency of the evidence supporting parental termination, we must "look at all the evidence in the light most favorable to the finding to determine

whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true." *In re J.L.*, 163 S.W.3d at 85. We must assume that the trier of fact resolved disputed facts in favor of its finding if it was reasonable to do so. *Id.* We must also consider undisputed evidence, if any, that does not support the finding. *Id.* at 86.

In reviewing the evidence for factual sufficiency, we must give due deference to the fact finder's findings and not supplant its judgment with our own. *In re H.R.M.*, 209 S.W.3d 105, 108 (Tex. 2006). We review the entire record to determine whether a fact finder could reasonably form a firm conviction or belief that the parent violated the relevant conduct provisions of section 161.001(1) and that termination of the parent-child relationship would be in the best interest of the child. *In re C.H.*, 89 S.W.3d 17, 28 (Tex. 2005). If, in light of the entire record, the disputed evidence unfavorable to the finding is so significant that a reasonable fact finder could not have credited it and thereby formed a firm belief or conviction in the truth of the finding, then the evidence is factually insufficient. *In re H.R.M.*, 209 S.W.3d at 108.

### 2. Drug-Positive Birth

Section 161.001 of the family code provides that a court may base an order terminating the parent-child relationship on clear and convincing evidence that the parent has "been the cause of the child being born addicted to alcohol or a controlled substance, other than a controlled substance legally obtained by prescription . . . ." TEX. FAM. CODE ANN. § 161.001(1)(R). Here, the trial court's termination order included a finding that tracked this language, stating that A.T. has "been the cause of [A.M.] being born addicted

to alcohol or a controlled substance . . . as defined by § 261.001(8), Texas Family Code."

Section 261.001(8) defines "born addicted to alcohol or controlled substance" as a child:

(A) who is born to a mother who during the pregnancy used a controlled substance . . . and

(B) who, after birth as a result of the mother's use of the controlled substance or alcohol:
  (i) experiences observable withdrawal from the alcohol or controlled substance;
  (ii) exhibits observable or harmful effects in the child's physical appearance or functioning; or
  (iii) exhibits the demonstrable presence of alcohol or a controlled substance in the child's bodily fluids.

*Id.* § 261.001(8) (Vernon 2008).

The undisputed evidence at trial showed that A.T. used cocaine during her pregnancy and that A.M. suffered observable withdrawal effects. *See id.* § 261.001(8)(A), (B)(i)-(ii). A.T. admitted at trial that she had a history of drug abuse, including cocaine, and that she used cocaine during at least the first three-and-a-half months of her pregnancy with A.M. There was testimony at trial by both A.T. and A.M.'s foster mother that A.M. exhibited noticeable withdrawal symptoms immediately following her birth. When questioned by TDFPS, A.T. generally acknowledged that A.M. had suffered withdrawal symptoms. A.M.'s foster mother described the symptoms in detail. She stated that when A.M. first came to their home, she was approximately six weeks old, she was frail and tiny, and she was shaking from withdrawal. The foster mother stated that she took A.M. to the doctor because she was concerned about the shaking. Based on this testimony and giving due deference to the trial court's observation of the witnesses and weighing of the evidence, we determine that a reasonable fact finder could have concluded that there was

clear and convincing evidence that A.T. caused A.M. to be born addicted to a controlled substance.  *See In re H.R.M.*, 209 S.W.3d at 108.[2]

### 3.  Best Interest of Child

A.T. also challenges the sufficiency of the evidence to support the trial court's finding that termination of her parental rights is in A.M.'s best interest.  Although it is true that keeping a child with a parent is often in the child's best interest, *see In re R.R.*, 209 S.W.3d 112, 116 (Tex. 2006), it is also presumed that prompt and permanent placement of the child in a safe environment is in the child's best interest.  TEX. FAM. CODE ANN. § 263.307(a) (Vernon 2008).  When considering whether parental termination is in the child's best interest, the following non-exhaustive list of factors should be considered:  (1) the desires of the child; (2) the emotional and physical needs of the child now and in the future; (3) the emotional and physical danger to the child now and in the future; (4) the parenting abilities of the parties seeking custody; (5) the programs available to assist the parties seeking custody; (6) the plans for the child by the parties seeking custody; (7) the stability of the home or proposed placement; (8) the acts or omissions committed by the parent which may indicate that the existing parent-child relationship is not proper; and (9) any excuse for the acts or omissions committed by the parent.  *Holley v. Adams*, 544 S.W.2d 367, 372 (Tex. 1976).  The party seeking parental termination is not required to prove all nine factors.  *See In re C.H.*, 89 S.W.3d at 27 (providing that these considerations are not exhaustive nor must "*all* such considerations . . . be proved as a condition precedent to

---

[2] Because a trial court can involuntarily terminate parental rights based on any one predicate ground plus a finding of the child's best interest, *see In re A.V.*, 113 S.W.3d 355, 362 (Tex. 2003), we need not address A.T.'s remaining contentions regarding the trial court's findings on the other predicate grounds.  *See* TEX. R. APP. P. 47.1; *see also In re J.T.*, No. 13-08-00652-CV, 2009 WL 2077184, at *12 (Tex. App.–Corpus Christi July 16, 2009, no pet.) (mem. op.).

parental termination"). Moreover, in some cases, undisputed evidence of just one factor may be sufficient to support a finding that termination is in the best interest of the child. *Id.* Accordingly, we will now examine the evidence in light of these factors, as they are relevant to this case.

### a. The desires of the child.

Even though A.M. is a very young child, there is evidence that she has shown a preference for being with her foster parents rather than A.T. Both TDFPS case workers and the foster mother testified that A.M. clung to her foster mother when A.T. picked the child up for visits and appeared uncomfortable with A.T. There was testimony that the child cried for extended periods of time during the visits. The evidence also indicated that A.M. was very happy every time she was returned to the care of her foster parents, she calls her foster parents "mommy" and "daddy," and she has close relationships with her foster parents' extended family.

### b. The emotional and physical needs of the child now and in the future; the emotional and physical danger to the child now and in the future; the parental abilities of the individuals seeking custody; the acts or omissions of the parent which may indicate that the existing parent-child relationship is not a proper one.

Evidence of the above factors is substantial. Testimony at trial indicated that A.T. had difficulty connecting with A.M.; the foster mother testified that she had to show A.T. how to hold A.M. and how to comfort the child. Our review of the record reveals evidence that A.T. only sporadically visited A.M. and could not be reliably reached by TDFPS. A.T. was jailed twice in the year and a half after A.M. was born—once for assaulting a police officer and once for driving while intoxicated and child endangerment. A.T. pleaded no contest to assaulting the police officer and was convicted for child endangerment. The

7

child-endangerment conviction arose from a September 2008 incident in which A.T. left A.M. in her car at 2:00 a.m. while she went into the babysitter's house to pick up her other child after attending a party. When she returned to the car, the police were waiting for A.T. and arrested her for driving while intoxicated. As a result, A.M. was returned to her foster parents. Upon the child's return, her foster parents discovered that A.M. had a severe diaper rash and an ear infection. The evidence showed that the ear infection was so severe and untreated that A.M.'s ears were filled to the brim with yellow, foul-smelling pus that contained gnats. In short, there is clear and convincing evidence that A.T. lacks appropriate parenting skills, places A.M. in physical and emotional danger, and does not make responsible, or even lawful, decisions that would indicate she could sustain a proper parent-child relationship.

### c. The programs available to assist these individuals to promote the best interest of the child.

In May 2007, while A.M. was in the custody of her foster parents for the first time, the trial court ordered A.T. to complete a service plan to facilitate the return of A.M. to her custody. A.T. completed a video parenting course and drug assessment; however, she failed to comply with the remainder of her plan, which included regular random drug screenings, paying child support, and attending anger management classes and individual counseling. There was testimony that A.T. generally procrastinated in performing the goals of her plan and seemed to prioritize her own social life over accomplishing the tasks necessary to regain custody of A.M. And although A.T. insisted at trial that she made every effort to attend her scheduled visits with A.M., the evidence nonetheless indicates that her visits with A.M. were sporadic and that A.T. was unreliable in contacting TDFPS to inform the caseworker of her whereabouts.

**d. The plans for the child by these individuals or by the agency seeking custody and the stability of the home or proposed placement.**

Our review of the record indicates that A.M.'s foster parents plan to adopt her and that TDFPS has already initiated the procedures to make that happen. A.T. testified at trial that she is now living with her father and is in the process of obtaining her GED. A.T. insists that she can provide a stable environment for A.M. The trial court disagreed. First and foremost, it is undisputed that A.T.'s ability to care for A.M. is directly inhibited by the conditions of her probation for her child endangerment conviction, conditions which expressly forbid her to have contact with A.M. Moreover, there is evidence that A.T.'s father has a criminal record and that A.T., herself, was in and out of foster care as a child because of possible abuse by her parents.

In the event that the trial court decided to terminate or deny placement with A.T., she also urged the court to place A.M. with one of her family members. We note that the family members A.T. had in mind, although scheduled to testify at the bench trial, failed to appear. Furthermore, there is evidence that these family members had criminal records and that when TDFPS attempted to place A.M. with them after her birth, they were not reachable and later informed TDFPS that they were unwilling to take the child. Thus, there was sufficient evidence for the trial court to conclude that TDFPS's plan for A.M.'s adoption by her foster parents is superior to placement with A.T. or her family.

**e. Any excuse for the acts or omissions of the parent.**

Counsel for A.T. asserted at trial that the situation has been blown out of proportion by TDFPS, which planned from the very beginning for A.M. to be adopted by her foster parents. A.T. also testified that she had made mistakes and assured the trial court that she was trying to change. As previously described, however, the evidence indicates otherwise.

9

Moreover, we give deference to the trial court's determination regarding the credibility of the witnesses and will not substitute our own judgment. *See In re H.R.M.*, 209 S.W.3d at 108. The evidence is abundant that termination of A.T.'s parental rights is in A.M.'s best interest, and we will not second-guess the trial court's decision based on our secondary review of the record.

### 4. Conclusion

Viewing the evidence in the light most favorable to the findings, we conclude that a reasonable fact finder could have formed a firm belief that A.T. caused the drug-positive birth of A.M. and that termination was in the child's best interest. *See In re J.L.*, 163 S.W.3d at 85. Moreover, we conclude that the evidence was factually sufficient because the disputed evidence contrary to the findings was not so significant that the trial court could not have formed such a firm conviction or belief. *See In re H.R.M.*, 209 S.W.3d at 108. By our holding today, we are mindful that "[w]hile parental rights are of constitutional magnitude, they are not absolute." *In re C.H.*, 89 S.W.3d at 26. "Just as it is imperative for courts to recognize the constitutional underpinnings of the parent-child relationship, it is also essential that emotional and physical interests of the child not be sacrificed merely to preserve that right." *Id.* As such, we conclude that the trial court did not err in terminating A.T.'s parental rights. A.T.'s first issue is overruled.

### B. Admission of Evidence

By her second issue, A.T. complains that the trial court erred in admitting the report of Miguel DeLeon, M.D. over her objection that the report was hearsay. A.T. contends that the admission of the report harmed her because it was the only evidence that A.M. was born addicted to cocaine. Assuming without deciding that the medical record did contain

inadmissible hearsay, we nonetheless conclude that any erroneous admission was harmless because, as previously discussed, there was other evidence of A.M.'s drug-positive birth introduced to the trial court, without objection, after admission of Dr. DeLeon's record—specifically, A.T.'s admission that she used drugs during the first three and a half months of her pregnancy and testimony by both A.T. and the foster mother that A.M. suffered observable withdrawal symptoms immediately following her birth. *See* TEX. R. APP. P. 44.1; *Gee v. Liberty Mut. Fire Ins. Co.*, 765 S.W.2d 394, 396 (Tex. 1989) (holding that error in admission of evidence is not reversible unless it was reasonably calculated to and probably did cause rendition of improper judgment); *see also Volkswagen of Am., Inc. v. Ramirez*, 159 S.W.3d 897, 907 (Tex. 2004) (holding that error in the admission of testimony is deemed harmless and is waived if the objecting party subsequently permits the same or similar evidence to be introduced without objection). A.T.'s second issue is overruled.[3]

## III. CONCLUSION

The judgment of the trial court is affirmed.

NELDA V. RODRIGUEZ
Justice

Memorandum Opinion delivered and
filed this 5th day of November, 2009.

---

[3] Although A.T. states in her brief that the report was inadmissible because it contained hearsay statements, she also appears to make a cursory attack on the qualifications of the doctor and reliability of the report. To the extent A.T. is making an expert challenge, however, she has not preserved this issue for our review. Counsel for A.T. objected at trial to the content of the hospital records and the qualifications of the record's custodian to testify as to the contents of the records but did not obtain a ruling from the trial court. *See* TEX. R. APP. P. 33.1(a). Rather, the only timely objections related to the challenged report that were ruled upon by the trial court were based on hearsay and improper predicate for a business record. Accordingly, A.T.'s second issue in so far as it challenges the qualifications of Dr. DeLeon and the reliability of the report is waived.